# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| CASSANDRA M. MENOKEN, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | )     Civil Action No. 16-2480 (RMC) |
| VICTORIA A. LIPNIC, Acting Chair, | ) |
| Equal Employment Opportunity | ) |
| Commission, | ) |
|  | ) |
| Defendant. | ) |
| _____ | ) |

## MEMORANDUM OPINION

This is a case in which the Equal Employment Opportunity Commission (EEOC), which is the protector of employee rights to equal employment opportunity, is itself charged with violating the legal proscriptions of Title VII. Cassandra M. Menoken, an African-American female, was employed by the EEOC for thirty-five years. She complains here of a hostile work environment in retaliation for protected activity and interference with her rights under the Rehabilitation Act of 1973 (Rehab Act).

The Court has carefully reviewed the record and the parties' arguments and concludes that the Amended Complaint fails to survive the Agency's motion to dismiss.

## I. BACKGROUND

Ms. Menoken is an African-American female living in Washington, D.C. Am. Compl. [Dkt. 7] ¶ 4. For the past 35 years, Ms. Menoken has been employed as an attorney with the EEOC. *Id.* In 1993, Ms. Menoken took the administrative law judge (ALJ) examination administered by the Office of Personnel Management (OPM). *Menoken v. McGettigan*, 273 F. Supp. 3d 188, 192 (D.D.C. 2017) (*Menoken IV*). OPM is responsible for maintaining a register

of applicants for ALJ positions, which ranks applicants based on their examination scores.  *Id.*; *see also* Am. Compl. ¶ 65.  The 1993 ALJ Register was used by OPM until a new examination was held in 2007.  *Menoken IV*, 273 F. Supp. 3d at 192.

In 1994, Ms. Menoken filed an EEO Complaint against OPM, alleging that the ALJ examination discriminated against African-American and female applicants through its design and implementation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*  Am. Compl. ¶ 63.  In November 2000, an EEOC Administrative Judge ruled on Ms. Menoken's complaint and found the "partner benchmark," which awarded points to applicants who were partners at large law firms, had an adverse impact on the basis of race.  *Menoken IV*, 273 F. Supp. 3d at 193.  OPM was ordered to cease use of that benchmark, review and adjust the score of applicants who were affected by the benchmark, and notify agencies using the 1993 ALJ Register that the benchmark had a discriminatory impact.  *See id.* at 193-94; *see also* Am. Compl. ¶¶ 71-73.  The Administrative Judge denied individual relief to Ms. Menoken, finding that she was not denied an ALJ position as a result of the benchmark.  *See Menoken v. Whipple*, 605 F. Supp. 2d 148, 150 (D.D.C. 2009) (*Menoken I*).

In 2001, Ms. Menoken filed two appeals with the EEOC, alleging that OPM had failed to comply with the Administrative Judge's order and that the Administrative Judge erred in rejecting her other claims.  Am. Compl. ¶¶ 75, 77.  The EEOC rejected those appeals in 2003, *id.* ¶¶ 81, 84, and Ms. Menoken filed a civil action in the U.S. District Court for the District of Columbia, which was dismissed.  *See Menoken I*, 605 F. Supp. 2d at 148.

After Ms. Menoken's complaints were dismissed administratively by EEOC in 2003, she "began to sense a subtle shift in her work environment."  Am. Compl. ¶ 79.  She alleges that her colleagues at EEOC knew that her appeals had been "fixed" and that she could

prove it, so they began to "close ranks." *Id*. ¶ 85. The fact that she repeatedly criticized

"EEOC's unethical alliance with OPM caused her to be further isolated in headquarters." *Id*.

¶ 86. During this period, Ms. Menoken filed two retaliation complaints against OPM, the Social

Security Administration (SSA), and the Department of Health and Human Services (HHS). *Id*.

¶ 7. Ms. Menoken's retaliation claims were dismissed after she "abruptly withdrew from the

hearing process," although she appealed that dismissal to the EEOC. Mem. of P. & A. in Supp.

of Def.'s Mot. to Dismiss Pl.'s Am. Compl. or, in the Alt., for Summ. J. (Mot.) [Dkt. 8-1] at 4.

Both appeals were dismissed by EEOC in December 2013, *see Menoken v. Archuleta*, EEOC No.

0120120901, 2013 WL 6623020 (E.E.O.C. Dec. 2, 2013) and *Menoken v. Archuleta*, EEOC No.

0120101466, 2013 WL 6623027 (E.E.O.C. Dec. 2, 2013), and Ms. Menoken sought

reconsideration of both appeals, which was denied in October 2015. *See* Mot. at 7-8. Ms.

Menoken filed two separate lawsuits in the U.S. District Court for the District of Columbia,

seeking *de novo* review of her retaliation claims. *See Menoken v. Colbert*, No. 16-84 (D.D.C.

filed Jan. 15, 2016) (*Menoken II*); *Menoken v. Colbert*, No. 16-83 (D.D.C. filed Jan. 15, 2016)

(*Menoken III*); *see also Menoken IV*, 273 F. Supp. 3d at 194-95 (District Court's decision on the

combined motions to dismiss in Civil Case Nos. 16-83 and 16-64); Mot. at 4-5. The District

Court dismissed all claims pertaining to OPM and SSA's alleged retaliation as precluded under

*res judicata* and issue preclusion and dismissed Ms. Menoken's claim of retaliation against HHS,

but denied the motion to dismiss with respect to claims of retaliation against OPM and

discrimination against OPM and HHS. *See Menoken IV*, 273 F. Supp. 3d at 192.

   In 2012, while Ms. Menoken's appeals of the two retaliation claims were pending

administratively, she met with the EEOC Chief Operating Officer (COO) Claudia A. Withers "to

discuss concerns regarding the process put into place for EEOC's adjudication of Plaintiff's then

pending appeals." Am. Compl. ¶ 6. Ms. Menoken "expressed concerns that her pending appeals were vulnerable to compromise because their processing was being controlled by headquarters officials unlikely to be impartial" due to their involvement in her original 2001 OPM appeals. *Id*. ¶ 8. Ms. Menoken alleges that she had filed a motion with the EEOC requesting a neutral process for her appeals two years before her meeting with COO Withers but it had not been answered. *Id*. ¶ 12. Ms. Menoken informed COO Withers that she was concerned that OPM and EEOC were communicating about her position at EEOC and that she "had reason to believe EEOC had agreed to monitor [her] work activities to accommodate OPM's demand that [she] not be involved in EEOC matters in which OPM may have an interest." *Id*. ¶ 17. Ms. Menoken was concerned that this communication between OPM and EEOC had improperly linked her employment to her protected activity against OPM. *Id*. ¶ 18. Although Ms. Menoken was originally optimistic that her meeting with COO Withers would result in a more comfortable working environment, she later came to believe that those in EEOC headquarters were informed that she was not a valued employee, but instead a legal adversary. *Id*. ¶ 24.

On September 11, 2012, Ms. Menoken requested a meeting with EEOC's Disability Program Manager to discuss her need for a reasonable accommodation. *Id*. ¶ 92. She asserted that she was not "currently able to meet the demands of [her] job" because her health has been affected by the uncertainty and delay surrounding her pending EEO appeals. Ex. 1, Mot. (Reasonable Accommodation Request) [Dkt. 8-3] at 000400.[1] As an accommodation, Ms. Menoken asked for paid leave for 6 months or until her appeals were resolved, whichever proved to be longer. *Id.* Ms. Menoken submitted a supportive doctor's letter two weeks later. The

[1] Page citations to exhibits to EEOC's Motion are to the Bates Number located at the bottom of the exhibits.

doctor diagnosed anxiety and depression since 2005, and Post Traumatic Stress Disorder (PTSD) "caused by cumulative trauma suffered as a result of her efforts to deal with EEOC as both her employer and the adjudicator of claims she filed against the Office of Personnel Management 18 years ago." Ex. 2, Mot. (Dr. Kristin Huffer Letter) [Dkt. 8-4]. Ms. Menoken's superiors were allegedly told by COO Withers to delay any response to this request until further notice. Am. Compl. ¶ 94. COO Withers met with Ms. Menoken in November 2012 to propose a settlement for Ms. Menoken's pending EEO complaints, which included granting in part the requested accommodation, *id*. ¶ 96, but Ms. Menoken rejected the settlement offer. *Id*. ¶ 97.

Thereafter, in December 2012, Ms. Menoken contacted the EEOC's Office of Equal Opportunity and later met with an EEO Counselor, as required by federal regulations. *See* 29 C.F.R. § 1614.105(a)(1). On February 6, 2013, she filed a formal EEO complaint asserting:

> (1) EEOC violated Title VII by subjecting Plaintiff to a 10 year pattern of hostile and adverse treatment rooted in its antagonism towards Plaintiff's pursuit of discrimination claims against OPM;
>
> (2) EEOC violated Title VII in and after 2012 by subjecting Plaintiff to hostile and adverse treatment because she reported EEOC's retaliatory abuses to the Chair's Office;
>
> (3) EEOC violated the Rehabilitation Act [29 U.S.C. § 701 *et seq.*] and Title VII in 2012 by interfering with Plaintiff's efforts to be reasonably accommodated where such interference was an independent violation of law partially attributable to her protected activity under Title VII;
>
> (4) EEOC violated the Rehabilitation Act and Title VII by denying Plaintiff a reasonable accommodation, for no good reason, where the denial was partially rooted in her protected activity under Title VII.

Am. Compl. ¶ 27. The specific acts that Ms. Menoken alleges created a hostile and adverse work environment include:

> In or around 2002, *while Plaintiff's OPM claims were pending adjudication*, EEOC and OPM agreed that EEOC would

accommodate OPM's demand that Plaintiff's work activities be monitored, creating an ongoing fear in Plaintiff that she was vulnerable to being "set up."

In 2006, *while Plaintiff's OPM claims were pending adjudication*, EEOC joined forces with OPM to coerce Plaintiff into "authorizing" an FBI investigation into her "suitability" for federal employment on the asserted ground that neither agency had a record of a background investigation ever being done in connection with Plaintiff's federal employment. The asserted ground was later shown to be *false*; it was a pretext intended to allow OPM to abusively intrude into Plaintiff's personal life in ways it had been prohibited from doing in the discovery process.

In 2007, *while Plaintiff's OPM claims were pending adjudication,* EEOC joined forces with OPM to attempt to induce Plaintiff to retire under the belief that her [Office of Federal Operations] OFO position was slated for elimination. It was later revealed that Plaintiff's position was *not* slated for elimination. EEOC's attempt to induce Plaintiff to retire was a ploy to limit the monetary impact of OPM's potential exposure.

*Id.* ¶¶ 89-91 (emphasis in original). This complaint was docketed as EEOC No. 2013-0010 by the Office of Equal Opportunity, which began an investigation. However, that Office failed to complete its investigation into Ms. Menoken's complaint within 180 days, *see* 29 C.F.R. § 1614.108(e), (f), and Ms. Menoken "invoked her right to proceed to the hearing stage of the process when the investigation . . . stalled." Am. Compl. ¶¶ 37-38. The Amended Complaint before the Court does not indicate whether a hearing was held.

In early 2013, Ms. Menoken voluntarily went "on extended leave," using "a combination of 'paid' leave and leave without pay." *Id.* ¶ 100. In approximately February 2013, Ms. Menoken's supervisor, Carlton Hadden, stopped approving or denying her requests for leave. *Id.* ¶ 101. In March 2013, Mr. Hadden stopped certifying Ms. Menoken's time to payroll, which prevented her from receiving compensation for paid leave. *Id.* ¶ 103. On April 5, 2013, Ms. Menoken was notified that the EEOC had determined not to grant the accommodation she had requested. *See* Ex. 3, Mot. (Walton Letter) [Dkt. 8-5]. It explained, in part, that Ms.

Menoken's requested accommodation was not reasonable and, in part, that such an accommodation would unduly impact the Agency as it was facing a sequester and potentially imminent employee layoffs. *Id.* In October 2013, Ms. Menoken was notified that she had been "unenrolled" from her health insurance benefits. Am. Compl. ¶ 110. She informed her supervisors and, although she never received a direct response, she was notified about a week later that her insurance was reinstated. *Id.* ¶¶ 112-14. Following the closure of the government in the budget stalemate of Fiscal Year 2013, Ms. Menoken did not receive compensation for the lapsed period between appropriations because her time was identified as leave without pay, rather than paid leave. Ms. Menoken attributes this to a direct order from Mr. Hadden. *Id.* ¶ 117.

In calendar year 2014, Ms. Menoken began to consider retirement; in the process, she learned that she risked losing her health insurance if she retired. *Id.* ¶¶ 119, 121. As a result, she chose not to retire and returned to work in June 2014, approximately 17 months after she had first taken leave. *Id.* ¶ 122. EEOC had not filled her position while Ms. Menoken took extended paid and unpaid leave.

Ms. Menoken filed another EEO complaint on September 26, 2014, "asserting violations of the Rehabilitation Act after learning that EEOC had disregarded her right to medical privacy as well as her right not to be subjected to unwarranted medical inquiries." *Id.* ¶ 42. This administrative complaint was docketed as EEOC No. 2014-0039. Specifically, it alleged that "EEOC arranged for a stranger, not employed by the government, to repeatedly access and review medical information in Plaintiff's [Office of Workers' Compensation Programs (OWCP)] file." *Id.* ¶ 43. The two new administrative complaints, EEOC Nos. 2013-0010 and 2014-0039, were consolidated in December 2014. *Id.* ¶ 48. The Amended Complaint

alleges that the Administrative Judge denied both complaints "in summary fashion," but does not indicate whether a hearing was held or when the decision was issued. *Id.* ¶ 49. The EEOC notified Ms. Menoken of its decision to ratify the finding of the Administrative Judge on September 19, 2016. *Id.* ¶ 53.

On December 20, 2016, Ms. Menoken filed this action against Jenny R. Yang, then Chair of the EEOC, in her official capacity, alleging that the EEOC subjected her to a hostile work environment in retaliation for protected activity in which she engaged concerning both OPM and EEOC, in violation of Title VII; and deliberately interfered with her efforts to exercise her rights, refused to provide a reasonable accommodation, and monitored and made public her confidential medical information, in violation of the Rehab Act. On June 9, 2017, Ms. Menoken filed an Amended Complaint which includes the same two claims and replaces Ms. Yang with Victoria A. Lipnic, the current Acting Chair of the EEOC. On June 23, 2017, EEOC filed its Motion to Dismiss Plaintiff's Amended Complaint or, in the Alternative, for Summary Judgment. *See* Mot. Ms. Menoken opposed, Pl.'s Opp'n to Def.'s Mot. to Dimiss Pl.'s Am. Compl. or in the Alt. for Summ. J. (Opp'n) [Dkt. 11-1]; EEOC replied. Def.'s Reply in Supp. of its Mot. to Dismiss Pl.'s Am. Compl. or, in the Alt., for Summ. J. (Reply) [Dkt. 12]. The motion is ripe for review.

## II. LEGAL STANDARD

### A. Motion to Dismiss – Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss "for failure to state a claim upon which relief can be granted" and "is intended to test the legal sufficiency of the complaint." *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003). A complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal

citations omitted). Although a complaint does not need to include detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The facts alleged "must be enough to raise a right to relief above the speculative level." *Id.* A complaint must contain sufficient factual matter to state a claim for relief that is "plausible on its face." *Id.* at 570. When a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, then the claim has facial plausibility. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. But a court need not accept as true legal conclusions set forth in a complaint. *Iqbal*, 556 U.S. at 678. The "standard for dismissing a complaint with prejudice is high: 'dismissal with prejudice is warranted only when . . . the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *Belizan v. Hershon*, 434 F.3d 579, 583 (D.C. Cir. 2006) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996)).

        In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007). Generally, when a court relies upon matters outside the pleadings, a motion to dismiss must be treated as one for summary judgment and decided under Rule 56. *See* Fed. R. Civ. P. 12(d). "However, where a document is referred to in the complaint and is central to the plaintiff's claim, such a document attached to the motion papers may be

considered without converting the motion to one for summary judgment." *Nat'l Shopmen Pension Fund v. Disa*, 583 F. Supp. 2d 95, 99 (D.D.C. 2008). Where a motion to dismiss is converted to a motion for summary judgment before discovery, the court must make sure both parties have had the opportunity to offer evidence in support of their factual allegations. *See Wiley v. Glassman*, 511 F.3d 151, 160-61 (D.C. Cir. 2007) ("[T]his court is free to characterize the District Court's Rule 12(b)(6) dismissal as a grant of summary judgment under Rule 56 and affirm, so long as we are assured that both sides had a reasonable opportunity to present evidence.").

### B. Motion for Summary Judgment – Fed. R. Civ. P. 56

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Moreover, summary judgment is properly granted against a party who, "after adequate time for discovery and upon motion, . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "[t]he mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Id.* If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted."

*Anderson*, 477 U.S. at 249-50 (citations omitted).  On summary judgment, the district judge must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52.

### C.  Jurisdiction and Venue

The Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as Title VII and the Rehab Act arise under the laws of the United States. *See* 42 U.S.C. § 2000e-16(c); 29 U.S.C. § 794(a); 42 U.S.C. § 1981a.  Venue is proper in the U.S. District Court for the District of Columbia because "[a]ll alleged unlawful acts were committed in the District of Columbia."  Am. Compl. ¶ 3; *see also* 28 U.S.C. § 1391(b)(2).

## III.  ANALYSIS

The Amended Complaint contains two counts.  Count I "asserts that [EEOC] violated Title VII by subjecting [Ms. Menoken] to a hostile work environment because of her protected activity against OPM and EEOC and engaging in a pattern of retaliatory mistreatment that includes 'discrete' and 'non-discrete' acts as well as acts that independently violated the Rehabilitation Act."  Am. Compl. at 20.  Count II "asserts that [EEOC] violated the Rehabilitation Act by deliberately interfering with [Ms. Menoken's] efforts to exercise rights under thate [sic] Act and refusing to provide [her] a reasonable accommodation.  [EEOC] also violated the Act by monitoring, and making public, [her] confidential medical information." *Id.* EEOC's Motion to Dismiss describes the Amended Complaint as raising three separate claims: one under Title VII and two under the Rehab Act.  In this counting, EEOC separates Ms. Menoken's allegation that EEOC failed to provide a reasonable accommodation under the Rehab Act and her allegation that the agency failed "to maintain her medical information in confidence."  Mot. at 16.  In Opposition, Ms. Menoken clarifies that she intended her Amended

Complaint to include five claims, *i.e.*, one hostile work environment claim under Title VII and four claims under the Rehab Act.

> [T]he Amended Complaint asserts four claims under the Rehabilitation Act . . . [:] 1) deliberately interfering with Plaintiff's efforts to exercise rights under the Act (the "interference" claim); 2) refusing to provide Plaintiff a reasonable accommodation (the "reasonable accommodation" claim); 3) monitoring Plaintiff's confidential medical information (the "medical inquiries" claim); and 4) making public Plaintiff's confidential medical information (the "confidentiality" claim).

Opp'n at 11. While Ms. Menoken's Amended Complaint does not clearly specify the four Rehab Act claims described above, the Court will address each. For the reasons stated below, Counts I and II will be dismissed for failure to state a claim on which relief can be granted.

## A. Count II: Rehabilitation Act

The purpose of the Rehab Act is "to empower individuals with disabilities to maximize employment, economic self-sufficiency, independence, and inclusion and integration into society." 29 U.S.C. § 701(b)(1). Under the Rehab Act, the federal government is required to create an affirmative action program "for the hiring, placement, and advancement of individuals with disabilities." *Id.* § 791(b). When courts evaluate whether the federal government has satisfied its obligations under the Rehab Act, they apply the standards of the Americans with Disabilities Act (ADA) of 1990, 42 U.S.C. § 12101 *et seq. See* 29 U.S.C. § 791(f). The ADA requires employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

An employee claiming a right to an accommodation under the Rehab Act and ADA must show that she is a "qualified individual," that is, an employee who "with or without reasonable accommodation, *can perform* the essential functions of the employment position that such individual holds." *Id*. § 12111(8) (emphasis added). Therefore, to advance a claim for a violation of the Rehab Act, a plaintiff must allege that: (1) she had a disability within the meaning of the statute, (2) the employer had notice of the disability, (3) "with [or without] reasonable accommodation [the employee] could perform the essential functions of [the] job"; and (4) "the employer refused to make such accommodations." *Floyd v. Lee*, 968 F. Supp. 2d 308, 315-16 (D.D.C. 2013).

### 1. Failure to Provide a Reasonable Accommodation

EEOC challenges Ms. Menoken's status as a "qualified individual" to perform her job, with or without an accommodation, and argues that the accommodation she requested was not reasonable. The opposition does not respond to the argument that Ms. Menoken was not a "qualified individual" and so waives her chance to do so. It is conceded and requires dismissal of Ms. Menoken's reasonable accommodation claim. *See Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."), *aff'd sub nom. Hopkins v. Women's Div., Gen. Bd. of Global Ministries, United Methodist Church*, 98 F. App'x 8 (D.C. Cir. 2004).

In addition, the acknowledged facts demonstrate that Ms. Menoken was not a "qualified individual." As relevant here, she must show that she was able to perform the necessary functions of her position, with or without an accommodation, when EEOC denied her

request.  *See Minter v. District of Columbia*, 809 F.3d 66, 70 (D.C. Cir. 2015).  But the very accommodation requested was to *not* perform the necessary functions of her position for so long as her EEO charges were pending, which is the exact opposite of showing that she was qualified to perform her job with an accommodation.  For that reason, the Court finds that Ms. Menoken can allege no facts to show she is a qualified individual under the Rehab Act and this claim will be dismissed with prejudice.

EEOC also moves for summary judgment on Ms. Menoken's reasonable accommodation claim because the accommodation requested was not reasonable.  EEOC identifies the flaw as requesting an indefinite amount of paid leave.  Ms. Menoken opposes summary judgment, arguing that the Amended Complaint does not indicate that she requested indefinite leave.  *See* Opp'n at 14.

It is correct that the Amended Complaint does not state that Ms. Menoken requested indefinite paid leave as a reasonable accommodation.  In point of fact, the Amended Complaint contains no facts or explanation of what accommodation was requested and denied; it merely alleges repeatedly that a reasonable accommodation was not provided.  When considering a motion to dismiss or for summary judgment on the pleadings, a court may consider additional documents "upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss."  *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119-20 (D.D.C. 2001); *see also Abhe & Svoboda*, 508 F.3d at 1059; *Nat'l Shopmen Pension Fund*, 583 F. Supp. 2d at 99.  The Amended Complaint specifically mentions Ms. Menoken's September 11, 2012 request to EEOC to discuss her need for a reasonable accommodation.  *See* Am. Compl. ¶ 92.  With its brief, EEOC submitted her written request of the same date; it sought "[p]aid leave for 6

months or until such time as my discrimination complaints are adjudicated (whichever is longer)." Reasonable Accommodation Request at 000400; *see also* Mot. at 16-17. Dr. Huffer's supporting letter also gave no estimate of the expected duration of the paid leave it sought. *See* Dr. Kristin Huffer Letter. Under these circumstances, the Court considers the Reasonable Accommodation Request and Dr. Huffer's Letter in assessing EEOC's contention.

By their clear terms, both the Reasonable Accommodation Request and Dr. Huffer's Letter asked for *paid* leave for so long as Ms. Menoken's then-current EEO complaints were pending. The history of Ms. Menoken's own EEO activity demonstrates the uncertainty and potential duration of such administrative processing, without regard to later court litigation. By definition, Ms. Menoken asked for an uncertain and indefinite amount of paid leave, which the Court finds is not a reasonable request. It agrees with EEOC guidelines to the same effect. "An employer does not have to provide paid leave beyond that which is provided to similarly-situated employees." Equal Employment Opportunity Commission, *Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act*, 2002 WL 31994335, at *14 (Oct. 17, 2002); *see also id.* (explaining that use of "accrued paid leave, or unpaid leave, is a form of reasonable accommodation when necessitated by an employee's disability"). Because Ms. Menoken's requested accommodation of paid leave for an extended period of unknown duration was not reasonable, this claim fails as a matter of law.

### 2. Confidentiality

Ms. Menoken alleges that EEOC violated the Rehab Act by "monitoring, and making public, [her] confidential medical information." Am. Compl. at 20. EEOC moves to dismiss, arguing that Ms. Menoken failed to allege (1) what records were accessed, (2) if the records were obtained as part of a medical inquiry by EEOC when it considered her request for a

reasonable accommodation, and (3) whether she suffered tangible harm as a result of the alleged disclosure. *See* Mot. at 18-19. Ms. Menoken responds, without citing any portion of the Amended Complaint or any legal authority, that the Amended Complaint includes allegations of a medical inquiry and that she was not required to plead tangible harm as a result of the breach of confidentiality. *See* Opp'n at 12-13.

The only allegations in the Amended Complaint related to unauthorized access to Ms. Menoken's medical history relate to information contained in the file pertaining to her Workers' Compensation claim. Ms. Menoken alleges that in March 2014 the federal Office of Workers' Compensation Programs found that she had suffered a medically-diagnosed occupational injury. Am. Compl. ¶ 22. She further alleges that she filed an EEO complaint on September 26, 2014, which complained that the EEOC had violated the Rehab Act by "disregard[ing] her right to medical privacy as well as her right not to be subjected to unwarranted medical inquiries," *id*. ¶ 42, and that, in "early 2014, EEOC arranged for a stranger, not employed by the government, to repeatedly access and review medical information in [Ms. Menoken's Workers' Compensation] file." *Id*. ¶ 43.

The ADA, and by extension the Rehab Act, permits employers to make inquiries into an individual's disability and the nature and severity of the disability, if the inquiry "is shown to be job-related and consistent with business necessity" and relates to "the ability of an employee to perform job-related functions." 42 U.S.C. § 12112(d)(4)(A) and (B). Any information regarding the employee's medical history or medical condition obtained as a result of such an inquiry must be maintained by the employer "in separate medical files" and treated as confidential. *Id*. § 12112(d)(3)(B).

These legal rights of access are not relevant here, however. The problem with this alleged violation of the Rehab Act is one of timing. Ms. Menoken clearly alleges that the documents were considered and accessed without authorization as part of a workers' compensation claim in 2014. However, EEOC's investigation and consideration of Ms. Menoken's Rehab Act reasonable accommodation request began in September 2012, when she originally requested an accommodation, and concluded in April 2013, when the requested accommodation was denied. *See* Am. Compl. ¶ 42; *see also* Walton Letter. The Amended Complaint includes no allegations to explain why purported unauthorized access to Ms. Menoken's medical records in early 2014 can be tied to EEOC's actions with regard to Ms. Menoken's Rehab Act reasonable accommodation request, which concluded almost a year before the records were allegedly accessed.

As a matter of logic and law, a later event cannot be the cause of an earlier one. *See, e.g., Oetiker v. Jurid Werke GmbH*, No. 74-1670, 1981 WL 2025, at *4 (D.D.C. Feb. 17, 1981) (noting that it is logically impossible for a patent to issue before the invention occurred). A review of Ms. Menoken's Workers' Compensation file in 2014 could not have caused any impact on her request for a reasonable accommodation, almost two years earlier, or its denial, almost one year earlier. The Court will also dismiss Ms. Menoken's confidentiality claim with prejudice because no additional allegation consistent with the Amended Complaint would cure the temporal deficiency of the claim.[2]

---

[2] An additional flaw in this confidentiality claim is the lack of alleged harm from an unauthorized access to her Workers' Compensation records.

*3.  Interference and Unlawful Access*

Ms. Menoken argues that she has made out two additional claims under the Rehab Act that EEOC did not perceive when preparing its Motion to Dismiss.  She argues that since EEOC did not move to dismiss those claims, it waives any such arguments.  *See* Opp'n at 12.  EEOC replies that the "interference" and "medical inquiries" claims identified by Ms. Menoken, *id*. at 11, are not cognizable as a matter of law under the Rehab Act.  *See* Reply at 4-5.  The Court agrees.

Qualified employees are entitled to reasonable accommodations and may challenge the result of the process identifying and providing or not providing an accommodation, which Ms. Menoken does here.  While an employee can complain when there is *no* such process, the law does not recognize a claim concerning the sufficiency of the process itself.  *See Pantazes v. Jackson*, 366 F. Supp. 2d 57, 70 (D.D.C. 2005) (finding that because the process of identifying a reasonable accommodation is not an end in itself, to raise a claim the employee must show that as a result of the process the employer failed to fulfill the requirements of the Act).  The settlement offer by COO Withers, alleged as "interference" with Ms. Menoken's rights to obtain a reasonable accommodation, is not cognizable as a separate claim under the Rehab Act.

Ms. Menoken's "medical inquiries" claim also fails to constitute a legal claim under the Rehab Act.  The statute allows federal employers to make medical inquiries necessary to assess an employee's ability to perform her duties and determine if a reasonable accommodation is available.  *See* Walton Letter at 000398 (indicating that EEOC requested authorization for limited medical disclosure from Ms. Menoken, but she denied the request).  The Amended Complaint includes no allegations that the EEOC made unlawful inquiries into Ms. Menoken's medical history; nor does it identify the provision of the Rehab Act authorizing

suit for lawful inquiries. The mere fact that a "ontract employee accessed Ms. Menoken's file does not constitute a violation of the Act. For these reasons, both Ms. Menoken's "interference" and "medical inquiries" claims under the Rehab Act must be dismissed with prejudice.

### B. Count I: Title VII

Ms. Menoken asserts that she suffered a hostile work environment in violation of Title VII in retaliation for her protected activities. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). To state a claim for retaliation, a plaintiff must allege "that (1) [she] engaged in protected activity; (2) [she] was subjected to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action." *Baird v. Gotbaum*, 792 F.3d 166, 168 (D.C. Cir. 2015). In claims of retaliation through a hostile work environment, the employee suffers an adverse employment action arising from a group of acts that are "adequately linked such that they form a coherent hostile environment claim." *Id*. Adequately linked, or cohesive, acts could "involve the same type of employment actions, occur relatively frequently, and[/or] be perpetrated by the same managers." *Id*. at 169. Such acts must be "of such severity or pervasiveness as to alter the conditions of . . . employment and create an abusive working environment." *Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006). When determining if a group of alleged acts is severe and pervasive enough to constitute a hostile environment, a court considers "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

EEOC moves to dismiss Ms. Menoken's hostile work environment claim because she: (1) does not allege acts that are adequately linked and, therefore, cohesive; (2) does not allege acts that are adequately severe or pervasive; (3) has not exhausted each element of her

claim; (4) does not allege a causal connection between her protected activity and the alleged acts; and (5) her complaints about EEOC handling of her earlier discrimination appeals are not actionable under Title VII.  *See* Mot. at 20-21.  Ms. Menoken argues that (1) the conduct alleged was severe and pervasive; (2) a reasonable jury could conclude that EEOC's actions were "orchestrated and/or approved at the highest levels of the agency to force [her] out[] and [] rooted in [her] criticism of EEOC's abusive alliance with OPM and corrupt processing of her OPM appeals"; and (3) she was not required to exhaust administratively each alleged act because they are to be viewed as a whole and not in isolation.  Opp'n at 14.

The hostile events alleged in the Amended Complaint include seven different events beginning in 2002 and ending in 2013:

> 2002:  EEOC agreed to monitor Ms. Menoken's work activities for OPM;
>
> 2006:  EEOC and OPM coerced Ms. Menoken into authorizing an FBI investigation into her suitability for federal employment;
>
> 2007:  EEOC and OPM attempted to induce Ms. Menoken to retire;
>
> February 2013:  Ms. Menoken's leave requests were no longer approved;
>
> March 2013:  Ms. Menoken's time was no longer certified to payroll;
>
> October 2013:  Ms. Menoken was unenrolled in health insurance for a brief period of time; and
>
> October 2013:  Ms. Menoken's leave was incorrectly reported as without pay during the government shutdown.

*See* Am. Compl. ¶¶ 89-91, 101, 103, 110, 117.  Ms. Menoken alleges no facts, other than that her OPM appeals were still pending, to support her allegation that the first three acts (occurring variously in 2002, 2006, and 2007) were sufficiently linked, let alone why they should be linked with much later events in 2013.  The three earlier acts did not involve the same types of

employment actions, were not temporally close, and there is no allegation that the same individuals at OPM and/or EEOC were involved. The gap in time between these alleged acts saps them of any relatedness. The Court finds that the Amended Complaint fails to make out a claim of hostile work environment based on the alleged acts in 2002, 2006, and 2007.

The final four alleged acts all occurred in 2013. Each of the acts occurred within an eight-month period and involved similar pay or benefits-related issues. Additionally, Ms. Menoken alleges that three of the four acts were perpetrated by her supervisor, Mr. Hadden. *See id.* ¶¶ 101, 103, 117. The Court finds these four acts may be sufficiently cohesive to undergird a hostile work environment allegation. The next question is whether the alleged acts were sufficiently severe or pervasive.

Although the four acts occurred in a relatively short period of time, they do not allege severe actions that "interfere[d] with [Ms. Menoken's] work performance." *Harris*, 510 U.S. at 23. Each error in pay or benefits occurred when Ms. Menoken was on voluntary leave, when she was performing no work to disrupt and was not in the workplace to suffer any hostility. While pay disruptions and temporary loss of health insurance surely caused Ms. Menoken anxiety, she offers no facts or allegations that raise these events above the level of a mere nuisance, much less that her ability to perform work for the EEOC was disrupted. To the contrary, Ms. Menoken remained on leave for some additional time with no further complications.

Because the Court finds that the Amended Complaint failed to allege sufficiently severe or pervasive hostile acts that could have interfered with Ms. Menoken's work, as needed to support a claim for hostile work environment, it will not address EEOC's remaining arguments. The Title VII claim in Count One will be dismissed.

**IV. CONCLUSION**

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss and dismiss the Amended Complaint in its entirety for failure to state a claim on which relief can be granted. Count One will be dismissed without prejudice. Count Two will be dismissed with prejudice. A memorializing Order accompanies this Memorandum Opinion.

Date: March 6, 2018

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge