UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CASSANDRA M. MENOKEN,

    *Plaintiff*,

v.

CHARLOTTE A. BURROWS,
Chair, United States Equal Employment
Opportunity Commission, *et al.*,

    *Defendants*.

No. 16-cv-2480 (DLF)

## MEMORANDUM OPINION

Cassandra Menoken brings this action against her former employer, the Equal Employment Opportunity Commission (EEOC), and its Chair asserting that they improperly denied her reasonable accommodations and interfered with her rights, in violation of the Rehabilitation Act, and subjected her to a hostile work environment, in violation of Title VII. Before the Court is the defendants' Motion for Summary Judgment. Dkt. 42. For the reasons that follow, the Court will grant the motion in part and deny it in part.

## I.    BACKGROUND

Plaintiff Cassandra Menoken worked as a legal advisor for the EEOC since at least 1982 until her recent retirement in 2019. Defs.' Statement of Undisputed Facts ¶¶ 1–2, Dkt. 42-2; Pl.'s Resps. to Statement of Undisputed Facts (Corrected) ¶¶ 1–2, Dkt. 51-1.[1] In 1994, she brought a discrimination complaint against the Office of Personnel Management regarding its method for

---

[1] The parties disagree about most of the relevant facts. The Background section contains only those facts on which the parties agree and cites to the Plaintiff's Responses to the Defendants' Statement of Undisputed Facts, Dkt. 51-1.

determining Administrative Law Judge appointments. Pl.'s Resps. ¶ 3. Between 1994 and 2018, the EEOC heard her appeals from this discrimination complaint and various grievances related to the complaint. First Am. Compl. ¶¶ 63–87, Dkt. 7; *see also* Defs.' Mem. at 3–6, Dkt. 42-1.

Separately, in 2012, Menoken submitted to the EEOC requests for various reasonable accommodations for her work as an employee. Pl.'s Resps. ¶¶ 4–5. The EEOC eventually denied her requests in a letter dated April 5, 2013. *Id.* ¶ 11. Starting in January 2, 2013, Menoken also took a period of leave for 1.5 years. *Id.* ¶ 15. She eventually retired from the EEOC effective January 31, 2019. *Id.* ¶ 34.

On December 20, 2016, Menoken filed a complaint against the Chair of the EEOC and the EEOC alleging that they subjected her to a hostile work environment in violation of Title VII, refused to provide her a reasonable accommodation and interfered with her rights under the Rehabilitation Act, and unlawfully monitored and made public her confidential medical information in violation of the Rehabilitation Act. Compl. at 16–17, Dkt. 1. She then filed a first amended complaint stating the same claims. First Am. Compl., Dkt. 7. Judge Rosemary M. Collyer granted the Chair's Motion to Dismiss the entirety of the first amended complaint and dismissed Menoken's Title VII claim without prejudice and Rehabilitation Act claims with prejudice. Mem. Op. at 22, Dkt. 13. Judge Collyer also denied Menoken's motion for reconsideration. Mem. Op. at 1, Dkt. 23. She found, among other things, no reason to revisit her ruling on Menoken's Rehabilitation Act claim for unlawful interference because, she concluded, an interference claim should be treated as an anti-retaliation claim. *See id.* at 8.

On appeal, this Circuit affirmed in part and reversed in part Judge Collyer's order. *Menoken v. Dhillon*, 975 F.3d 1, 4 (D.C. Cir. 2020). It reversed her dismissal of Menoken's Title VII claim because the Chair's allegedly retaliatory acts in 2013 were sufficiently linked and severe

to support a hostile work environment claim. *Id.* at 6–7. As to Menoken's Rehabilitation Act claims, the Circuit reversed Judge Collyer's dismissal of Menoken's claim for refusal to grant a reasonable accommodation because the court improperly relied on extra-complaint evidence "as definitive proof that the only accommodation Menoken sought was an uncertain and indefinite amount of paid leave." *Id.* at 8 (internal quotation marks omitted). Further, the Circuit clarified, the Rehabilitation Act permits plaintiffs to bring an independent claim for unlawful interference distinct from a claim for retaliation. *Id.* at 9. It found that the allegations in Menoken's first amended complaint, taken as a whole, sufficiently stated such an interference claim. *Id.* at 11. Finally, the Circuit affirmed the dismissal of Menoken's medical inquiries and confidentiality claims. *Id.* at 13.

Following the Circuit's ruling, the case was reassigned to the undersigned. On remand, this Court granted Menoken's Motion for Leave to File a Second Amended Complaint. Minute Order of December 15, 2021. Menoken's second amended complaint incorporated the factual allegations in her first amended complaint but restated her legal claims in accordance with the Circuit's ruling. Second Am. Compl. at 8–9, Dkt 39. The operative complaint now contains Rehabilitation Act claims for unlawful refusal to provide a reasonable accommodation and interference and Title VII claims for a retaliatory hostile work environment. *Id.* The Chair has moved for summary judgment on all of Menoken's claims.[2] Defs.' Mem. at 1–2.

## II.   LEGAL STANDARD

Under Rule 56, summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[2] Though the Chair also addresses in its motion the medical inquiries and confidentiality claims from the first amended complaint, the Court need not reach those claims because Menoken does not pursue them in her second amended complaint. *See* Second Am. Compl. at 8–9.

law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48 (1986). A "material" fact is one that could affect the outcome of the lawsuit. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). A dispute is "genuine" if a reasonable jury could determine that the evidence warrants a verdict for the nonmoving party. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895. In reviewing the record, the court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000).

A party "opposing summary judgment" must "substantiate [its allegations] with evidence" that "a reasonable jury could credit in support of each essential element of [its] claims." *Grimes v. District of Columbia*, 794 F.3d 83, 94 (D.C. Cir. 2015). The moving party is entitled to summary judgment if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**III. ANALYSIS**

    **A. Rehabilitation Act**

        *1. Refusal to grant reasonable accommodation*

The Rehabilitation Act requires employers to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A). To prove a violation of this provision, a plaintiff must show that: "(i) she was disabled within the meaning of the Rehabilitation Act; (ii) her employer had notice of her disability; (iii) she was able to perform the essential functions of her job with or without reasonable accommodation; and (iv) her employer denied her request for

a reasonable accommodation of that disability." *Solomon v. Vilsack*, 763 F.3d 1, 9 (D.C. Cir. 2014) (cleaned up).

Menoken alleges that the Chair improperly denied her 2012 request for a reasonable accommodation.[3] First Am. Compl. ¶¶ 92, 99. According to a confirmation of request for reasonable accommodation dated September 11, 2012, Menoken formally sought "[p]aid leave for 6 months or until such time as [her] discrimination complaints are adjudicated (whichever is longer)." Ex. 1 at 2, Dkt. 8-3. According to Menoken, during accommodations discussions she also sought reassignment to the position of director of the Washington Field Office, Ex. 1, Menoken 2022 Dep. at 64, Dkt. 42-4, and permission to "work independently on a special project until [her] OPM appeals were adjudicated," Ex. E, Menoken Decl. ¶ 49, Dkt. 45-6.

The Court will grant summary judgment in favor of the Chair on this claim because Menoken has not established that she could perform the essential functions of her job with a *reasonable* accommodation, as none of the three accommodations she proposed were reasonable. "The Rehabilitation Act covers requests for only those accommodations that are 'reasonable.'" *Scarborough v. Natsios*, 190 F. Supp. 2d 5, 25 (D.D.C. 2002). "An employer need not provide an accommodation . . . if the employee could not perform the essential functions of h[er] job even *with* such an accommodation." *Adams v. District of Columbia*, 50 F. Supp. 3d 47, 53–54 (D.D.C. 2014).

First, Menoken made a request for *indefinite* paid leave. Even though her request included six months as a minimum duration, Menoken also asked that the leave extend as long as it would

---

[3] In her motion for summary judgment, the Chair also addresses other reasonable accommodation requests Menoken made in 2017 and 2018. Defs.' Mem. at 31–33. The Court need not consider these requests because Menoken's second amended complaint does not encompass such allegations; nor, for that matter, did her first amended complaint. *See generally* Second Am. Compl., First Am. Compl.

5

take for the EEOC to adjudicate her discrimination complaints. Indeed, the doctor's letter in support of Menoken's request suggested an even more indefinite end date: "[o]nce recovery is achieved." Ex. 2 at 395–96, Dkt. 8-4. Such a request is not a request for a reasonable accommodation because "[c]oming to work regularly is an essential function of performing one's duties." *Holmes-Martin v. Leavitt*, 569 F. Supp. 2d 184, 201 (D.D.C. 2008) (internal quotation marks omitted); *see also Sampson v. Citibank, FSB*, 53 F. Supp. 2d 13, 18 (D.D.C. 1999) (finding request for leave to be indefinite despite the plaintiff's "dispute[] whether, in fact, indefinite leave was what was being requested" because doctor's letter was open-ended about how long recovery would take), *aff'd without opinion*, 221 F.3d 196 (D.C. Cir. 2000).

Second, the director position that Menoken sought was filled at the time by Acting Director Mindy Weinstein, so detailing Menoken to that position would have required ending Weinstein's detail. *See* Pl.'s Statement of Facts ¶¶ 6–7, Dkt. 45-1. Reassignment to a position that is not vacant is not a reasonable accommodation. *See* 42 U.S.C. § 12111(9)(B) (defining reasonable accommodation to include "reassignment to a *vacant* position" (emphasis added)). "An employee need not be reassigned if no vacant position exists; likewise, employers are not required to 'bump' an employee, or to create a new position." *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1305 (D.C. Cir. 1998) (citation omitted); *see also McFadden v. Ballard Spahr Andrews & Ingersoll LLP*, 611 F.3d 1, 5–6 (D.C. Cir. 2010) (employer not required to reassign employee to position temporarily left open when long-term permanent receptionist was on leave).

Finally, Menoken requested creation of an independent, "special project" for her to work on "until [her] OPM appeals were adjudicated." Menoken Decl. ¶ 49. But the Rehabilitation Act does not "require[] that an employer create a new position to accommodate a disabled employee, even if [s]he is a qualified individual to that new job." *Adams*, 50 F. Supp. 3d at 58. Put another

way, proposing to ignore existing job responsibilities in favor of newly created, "special" work is not a reasonable accommodation. *See id.*; *Floyd v. Lee*, 85 F. Supp. 3d 482, 510, 513 (D.D.C. 2015) (request for an additional assistant to help complete work was not a "reasonable" accommodation because an employer is not required to relieve an employee of essential functions or to hire additional employees to complete her tasks).

To the extent that Menoken argues instead that the Chair acted in bad faith during the interactive process, *see* Pl.'s Resps. ¶¶ 13–14, any bad faith would not be sufficient to preclude summary judgment because "the interactive process is not an end in itself." *Pantazes v. Jackson*, 366 F. Supp. 2d 57, 70 (D.D.C. 2005). The "employee at all times retains the burden of persuading the trier of fact that [s]he has been the victim of illegal discrimination due to h[er] disability"—namely, that "a reasonable accommodation would have allowed her to perform the essential functions of her job." *Floyd v. Lee*, 968 F. Supp. 2d 308, 328 (D.D.C. 2013). As explained, Menoken has not done so. And even if she had, Menoken also has not produced any evidence that the Chair acted in bad faith. *See Ward v. McDonald*, 762 F.3d 24, 34 (D.C. Cir. 2014) (finding employer's "participation bore all the hallmarks of good faith" when it "met with [the employee] on several occasions to discuss the request and sought more information from her physician to help . . . determine an appropriate accommodation"). If anything, the record reflects that *Menoken*, and not the Chair, broke off the interactive process, including by refusing to provide medical documentation or permit the release of medical information to support her requests. *See* Ex. 6 at EEOC1093–95, Dkt. 42-9; *Ward*, 762 F.3d at 34; *Doe v. Garland*, No. 18-cv-4, 2021 WL 4502038, at *9–10 (D.D.C. Sept. 30, 2021) ("[A]n employer is not required to provide an accommodation prior to receiving medical documentation that substantiates the employee's need for accommodation . . . ." (citation omitted)).

7

In sum, none of the three accommodations that Menoken sought were reasonable. Further, in her sworn declaration, deposition, and briefs, Menoken has not asserted that she sought any other forms of accommodation, or that any other accommodations would have permitted her to perform her essential job functions. *See* Ex. D, Menoken 2022 Dep. at 63–64, Dkt. 45-5; Menoken Decl. ¶¶ 43–51; Pl.'s Resps. ¶ 14 (admitting that the idea of telework "never came up" in 2013). Because Menoken has not shown that she was a qualified individual who was improperly denied a reasonable accommodation under the Rehabilitation Act, summary judgment will be granted in favor of the Chair on this claim.

   2.   *Interference*

Section 12203(b) of the Rehabilitation Act "makes it unlawful for a federal employer 'to . . . interfere with any individual' in the exercise or enjoyment of 'any right granted' under the statute." *Menoken*, 975 F.3d at 9 (quoting 42 U.S.C. § 12203(b)). This prohibition "does not operate as a retaliation provision subject to Title VII's burden-shifting framework." *Id.* To prove a claim for interference, a plaintiff must first show that she was "engaged in statutorily protected activity by requesting a reasonable accommodation for a disability, or that she was actively engaged in asserting those rights at the time the alleged interference occurred." *Id.* at 11. Menoken has done so. There is no dispute that, in 2012, she exercised her statutorily protected right to request a reasonable accommodation. *See* Defs.' Statement of Undisputed Facts ¶ 4. She also alleges that, when evaluating this request, the Chair interfered with her rights by offering an "outrageous" settlement proposal and improperly delaying processing of the request. First Am. Compl. ¶¶ 94–98.

Next, a plaintiff asserting an interference claim under the Rehabilitation Act must also establish that her employer's actions interfered with her rights, with the caveat that interference should not be read "so broadly that it would 'prohibit any action whatsoever [that] in any way

8

hinders a member of a protected class.'" *Menoken*, 975 F.3d at 11 (quoting *Brown v. City of Tucson*, 336 F.3d 1181, 1192 (9th Cir. 2003)). In its 2020 decision, the Circuit did not decide whether such interference must be done with either "discriminatory intent" or whether it depends on "how a reasonable employee would have understood the . . . action." *Id.* at 10. Nonetheless, the Circuit did conclude that Menoken's allegations, if true, sufficed to state a plausible claim of interference under either theory. *Id.* at 11. This Court also need not adopt either party's proposed framework because under either theory, summary judgment to the Chair would not be appropriate. Menoken has established a genuine dispute of material fact as to whether the Chair actionably interfered with her rights.

Record evidence shows that, until September 2012, Menoken was engaged in conversations with Chief Operating Officer Claudia Withers about reaching a "global solution" to her various discrimination grievances and appeals before the EEOC. Ex. 2, Menoken 2015 Dep. at 131, 135, 146, 157–58, Dkt. 42-5. According to Menoken's sworn testimony, Withers repeatedly offered Menoken settlements that would have resolved both her discrimination complaints and her requests for reasonable accommodation. *Id.* at 157–58, 162–63. In September 2012, however, frustrated with Withers's settlement offers, *id.* at 146, Menoken submitted a formal reasonable accommodation request for paid leave, Ex. 1 at 2, Dkt. 8-3. In November 2012, Withers made another settlement offer: "to grant six months of paid leave as a reasonable accommodation if [Menoken] signed a waiver agreeing not to file any legal claims against EEOC." Menoken Decl. ¶ 50. Menoken "rejected [the] offer and protested [the] unlawful attempt to use [her] need for a reasonable accommodation as a 'bargaining chip.'" *Id.* ¶ 51.

Regardless of the propriety of the Chair's various settlement offers through November 2012, *see* Defs.' Mem. at 34–35; *Menoken*, 975 F.3d at 11 ("Our disposition . . . should not be read

9

to suggest that allegations of a delay or a proposed settlement offer . . . necessarily amount to unlawful interference."), the Chair has not provided an explanation for the ensuing seven-week delay in processing Menoken's reasonable accommodation request. Although Menoken rejected the Chair's November 2012 settlement offer, the record suggests that the Chair did not begin to process Menoken's request in earnest until January 25, 2013. *See* Ex. 6 at 6, Dkt. 42-9.

The only justification the Chair offers for this delay—that Menoken's request was held in abeyance pending resolution by a settlement agreement,[4] *see* Defs.' Mem. at 36—is unsupported by the record. Although the Chair contends that Menoken "was the one who wanted a global settlement and initiated settlement discussions" that were still ongoing in December and January, *id.* (citing Menoken 2015 Dep. at 131), the Chair herself characterizes the "settlement talks 'about resolving the grievance'" as "end[ing] in *August 2012*," Defs.' Counter-Resps. to Statement of Undisputed Facts ¶ 13, Dkt. 50-1 (emphasis added). Similarly, Donna Walton, the newly appointed Disability Program Manager, admits that she was told "on or before December 5, 2012," that Menoken's request "was [still] to be held in abeyance, pending notification from the Office of the Chair." Ex. 15, Walton Aff. at EEOC1197, Dkt. 42-18. Yet in a letter to Menoken dated December 5, 2012, Walton wrote that she had "recently been advised that discussions are now at impasses [sic]." Ex. 4 at 1, Dkt. 42-7. The record shows no movement on Menoken's request for almost two additional months. Drawing all inferences in favor of Menoken, as the Court must, a reasonable jury could conclude that the Chair improperly delayed processing Menoken's request

---

[4] The Chair attributes any delay between September 2012 and December 5, 2012, "to the fact that the EEOC's Disability Program Manager at the time . . . became sick and subsequently died unexpectedly." Defs.' Mem. at 35–36. But even crediting this explanation, the Chair has provided no justification for the *subsequent* delay, between early December 2012 to late January 2013, other than the purported possibility that Menoken's requests "might be resolved by a settlement agreement." *Id.* at 36. As noted, this explanation is contradicted by the record.

from December 5, 2012 to January 25, 2013 based on a false justification. This could support an actionable interference claim. *See Menoken*, 975 F.3d at 11.

To be sure, at a later date, the Chair may be able to produce evidence that proves otherwise. It is possible, for example, that settlement discussions were actually still ongoing between December 5, 2012 and January 25, 2013, or that Walton began to process Menoken's request in December 2012, as soon as the settlement talks fell through. Alternatively, the Chair may be able to show that the nearly two-month delay was within the normal processing timeframe. *See, e.g.*, *Hartzler v. Mayorkas*, No. 20-cv-3802, 2022 WL 15419995 (D.D.C. Oct. 27, 2022) (noting in failure-to-accommodate context that "other courts in this Circuit have found that weeks- and months-long delays in [procuring] reasonable accommodations did not violate the Rehabilitation Act"). But, at least on the record presented and argued by the Chair, she cannot prevail on her motion for summary judgment on this claim because there is a genuine dispute whether she improperly delayed processing Menoken's request for a reasonable accommodation.[5]

As a final matter, the Court notes that Menoken's interference claim will survive even though none of the accommodations she ultimately sought were reasonable, *see supra* section III.A.1. This outcome is consistent with the Circuit's ruling, which reversed the district court's holding that "a plaintiff may challenge only a wrongful denial of a reasonable accommodation request, not the sufficiency of the process relating to such a request." *Menoken*, 975 F.3d at 9. An

---

[5] In her reply, the Chair argues that she should automatically be entitled to summary judgment because Menoken "failed to address her malicious interference claim in her opposition." Defs.' Reply at 10, Dkt. 50. But a court is not permitted "to treat an unopposed motion for summary judgment as conceded." *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 507 (D.C. Cir. 2016). And to the extent that the Chair instead suggests that Menoken has produced no affirmative evidence in support of her claim, *see Durant v. Dist. of Columbia Gvt.*, 875 F.3d 685, 696 (D.C. Cir. 2017), that assertion is untrue. The evidence discussed above is affirmative evidence of an improper delay.

11

interference claim is not a retaliation claim that would require the plaintiff to show she suffered a materially adverse action, *see Baloch v. Kempthorne*, 550 F.3d 1191, 1198 (D.C. Cir. 2008); rather, it requires only that the plaintiff show interference with her exercise of a Rehabilitation Act right, *cf. Gordon v. U.S. Capitol Police*, 778 F.3d 158, 165 (D.C. Cir. 2015) (Family Medical Leave Act (FMLA) plaintiff need not show that any "interference" actually deprived her of leave, only that the employer action had a "reasonable tendency to interfere with, restrain, or deny the exercise of or attempt to exercise an FMLA right" (internal quotation marks omitted)); *Menoken*, 975 F.3d at 10 (noting that the Chair proposed analogizing Menoken's interference claim to the FMLA's interference provision). Thus, Menoken's interference claim may survive summary judgment regardless of the merits of her accommodation requests.

### B. Title VII Hostile Work Environment

To establish a retaliation claim under Title VII, a plaintiff must show that "(1) [she] was engaged in protected activity; (2) [she] was subjected to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action." *Baird v. Gotbaum*, 792 F.3d 166, 168 (D.C. Cir. 2015) (citation omitted). To support a "special type of retaliation claim based on a hostile work environment," a plaintiff can "alleg[e] a series of individual acts that may not be actionable on [their] own but become actionable due to their cumulative effect." *Menoken*, 975 F.3d at 5–6 (cleaned up). The acts must be "both adequately linked such that they form a coherent hostile environment claim, and of such severity or pervasiveness as to alter the conditions of employment and create an abusive working environment." *Id.* at 6 (cleaned up). Further, a plaintiff "must establish a causal connection between the harassment and her protected activity." *Na'im v. Clinton*, 626 F. Supp. 2d 63, 79 (D.D.C. 2009).

Menoken alleges that, in 2013, she was subjected to a hostile work environment in retaliation for her various discrimination-related grievances and appeals to the EEOC. Second

12

Am. Compl. at 8. Specifically, she stated in a sworn declaration that, in 2013, her supervisor Carlton Hadden "stopped certifying [her] time to Payroll," Menoken Decl. ¶ 55; "did not respond to (or acknowledge) [her] efforts to understand why," *id.* ¶ 56; "secretly accessed [her] payroll account to block [her] from getting paid for a period that [she] was not on leave," *id.* ¶ 57 and "put [her] in jeopardy of losing [her] health insurance," *id.* ¶ 60. As the Circuit has already held, such actions could be sufficiently coherent and severe to constitute a hostile work environment claim.[6] *Menoken*, 975 F.3d at 7.

The Court will grant in part and deny in part summary judgment to the Chair on this claim because there is a genuine dispute whether there was a causal connection between Menoken's protected activity and some of the Chair's 2013 acts. Menoken asserts that the Chair's behavior "was part of a plan orchestrated . . . to create a basis for terminating [her]," Menoken Decl. ¶ 58, and that the EEOC hoped to "use[] its leverage as [her] employer to facilitate . . . efforts to intimidate [her] into dropping [her discrimination] claims," *id.* ¶ 32. These allegations of a causal connection are supported by the Chair's contemporaneous concern about resolving Menoken's various disputes with the EEOC, as evidenced by her repeated proposals in 2012 for global

---

[6] The only evidence that Menoken offers to prove that these events happened is her own sworn testimony. Even though her statements "are quite general" and could "be undercut" by further evidence, they are sufficient to create a genuine dispute of material fact. *Gray v. LaHood*, 917 F. Supp. 2d 120, 127 (D.D.C. 2013). The Circuit "has repeatedly held that under certain circumstances a plaintiff's sworn declaration can create a genuine issue of material fact." *Ortiz-Diaz v. U.S. Dep't of Housing & Urban Development*, 867 F.3d 70, 76 (D.C. Cir. 2017). Menoken's statements are "objective, non-conclusory statements of fact," *id.*, that she states are based on personal knowledge, *see* Menoken Decl. at 1; Fed. R. Civ. P. 56(c)(4). Further, as discussed below, they are not "undermined either by other credible evidence, physical impossibility[,] or other persuasive evidence that the plaintiff has deliberately committed perjury." *Chenari v. George Washington Univ.*, 847 F.3d 740, 747 (D.C. Cir. 2017). Based on Menoken's sworn statements, a reasonable jury could conclude that the Chair undertook acts sufficient to constitute a hostile work environment.

settlements, *see supra* section III.A.2, as well as the temporal proximity of the Chair's 2013 actions to Menoken's protected activity, which included her ongoing appeals before the EEOC regarding her 1994 discrimination claim, *see* Def.'s Mem. at 4–5, and filing in February 2013 of a formal claim against the EEOC in her capacity as an employee, *see* First Am. Compl. ¶ 27.  *See Pratt v. Pompeo*, 318 F. Supp. 3d 34, 40 (D.D.C. 2018) (noting that *prima facie* case for retaliation may be established by temporal proximity between protected activity and alleged adverse actions where the "two events occurred very close together," such as within "a period of less than three months" (cleaned up)); *cf. Na'im*, 626 F. Supp. 2d at 81 (rejecting plaintiff's claims where she "presented no direct evidence of retaliatory motive" and there was no temporal proximity).

In response, the Chair offers a legitimate, non-retaliatory reason for taking these actions: Menoken "was attempting [to] take [leave without pay (LWOP)] when she did not have approval." Defs.' Mem. at 39.  As to Hadden's delay in certifying Menoken's timesheets and approving her LWOP requests, the Court agrees that this is a legitimate explanation.  EEOC policy requires that requests for LWOP longer than 30 days be approved by someone other than the employee's direct supervisor.  *See* Ex. 3 at EEOC934, Dkt. 42-6.  Menoken had been advised that Hadden would need to seek such special approval to certify her leave requests. Ex. 7 at 2–3, Dkt. 42-10 (email to Menoken dated March 4, 2013, explaining that she would need to submit leave request for approval).  Indeed, Hadden then repeatedly sought LWOP extensions on Menoken's behalf, and the EEOC consistently approved these requests.  *See* Ex. 13, Dkt. 42-16; Ex. 14, Dkt. 42-17 (detailing timeline of repeated leave approvals).  Because the Chair has "proffered a legitimate . . . rationale" for Hadden's delay in certifying Menoken's leave requests and time sheets, "positive evidence . . . is required" to rebut it.  *Francis v. Perez*, 970 F. Supp. 2d 48, 68 (D.D.C. 2013) (cleaned up).  Menoken presents no such evidence.  Summary judgment in favor of

the Chair will thus be granted on Menoken's theory that the EEOC unlawfully delayed certifying her timesheets and failed to approve her LWOP requests.

But Menoken's other retaliatory hostile work environment theories will survive. The Chair has not sufficiently established a legitimate reason for changing the codes associated with Menoken's leave during the 2013 government shutdown, *see* First Am. Compl. ¶ 117; Menoken 2022 Dep. at 180–81, or for briefly disenrolling Menoken from her health insurance around October 28, 2013, First Am. Compl. ¶ 110; Menoken Decl. ¶ 60. The Chair asserts that the EEOC's electronic leave system, QuickTime, "automatically" converted Menoken's request for paid leave to LWOP because she did not have a sufficient balance of time available. Defs.' Statement of Undisputed Facts ¶ 18. But the Chair has produced no record evidence to support that assertion. The only evidence she cites is an affidavit by Robbie Dix, *see id.*, who stated that, during a government shutdown in *2019*, he did not change any codes in Menoken's file and "was told" that the system automatically changed paid leave to LWOP when paid leave was exhausted, *see* Ex. 30, Dix Decl. (Corrected) at EEOC1924–95, Dkt. 48-2. Even putting aside the hearsay nature of Dix's affidavit, his comment about the 2019 shutdown does not explain any change of codes made to Menoken's file in *2013*, especially given that Dix did not start as Menoken's supervisor until 2015—two years after the codes allegedly changed. *See id.* at EEOC1913. And even if the Court were to credit Dix's explanation, the Chair has not sufficiently supported it because she does not dispute that Menoken "attempted to use sick leave and annual leave portions" in 2013. Defs.' Counter-Resps. to Statement of Undisputed Facts ¶ 15. The Chair has offered no evidence that this sick and annual leave had been exhausted before the shutdown, so that any automatic change of codes would have been triggered. As to Menoken's allegation that the Chair interfered with her health insurance, the Chair simply responds that, because the problem was resolved a week later,

15

"the EEOC promptly went above and beyond its obligations to ensure that [Menoken] would maintain continuous healthcare coverage while [she] refused to report to work." Defs.' Mem. at 15. On its own, this explanation provides no explanation for the initial withdrawal of Menoken's insurance.

Drawing all inferences in favor of Menoken, as again the Court must, a reasonable juror could conclude that, in 2013, the Chair made "deliberate attempts to affect an employee's finances and access to healthcare" that were both sufficiently severe to constitute a hostile work environment, *Menoken*, 975 F.3d at 7, and retaliatory. The Chair may be able to produce evidence that Menoken's time codes were not changed in 2013; that any change was proper because Menoken had exhausted her paid leave balance; or that there was a legitimate explanation for the problems Menoken encountered with her health insurance. But on the current record, the Court will deny summary judgment to the Chair on these theories in support of Menoken's hostile work environment claim.

The Court will, however, grant summary judgment to the Chair as to Menoken's hostile work environment claim relating to events *after* 2013. In her second amended complaint, Menoken alleges that she was subject "[f]rom 2012 until her departure on January 31[,] 2019" to "predatory mind games, emotional assaults[,] and veiled threats and intimidation," Second Am. Compl. ¶ 50, and that she eventually retired in January 2019 because of the "increasingly aggressive efforts to 'bludgeon' her into retiring," *id.* ¶ 51. She further alleges that the EEOC retaliated against her "using its rule-making authority, in 2020, to retroactively 'codify'" its choice to "discriminat[e] against African American ALJ applicants." *Id.* ¶ 47. But just like Menoken's previous allegations that she suffered a hostile work environment between 2002 and 2007, the Chair's alleged post-2013 acts are insufficiently linked to constitute a plausible hostile work

environment claim. *See Menoken*, 975 F.3d at 6 (affirming district court's dismissal of Menoken's claim relating to acts before 2013). "To determine whether a group of alleged acts is sufficiently linked, courts often consider whether the acts in question involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." *Id.* (cleaned up). Menoken has offered no information about who performed these alleged acts or how they related to one another or to earlier alleged acts of retaliation. Accordingly, the alleged post-2013 actions of the Chair cannot form the basis of a hostile work environment claim.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the defendants' motion for summary judgment. A separate order consistent with this decision accompanies this memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

February 2, 2023